**Karen PHIPPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–94–023 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted March 23, 1995.

Decided Aug. 16, 1995.

Dan P. Bradley, Houston, for appellant.

Michael R. Little, District Attorney, Liberty, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Murder. Following its verdict of "guilty," the jury assessed appellant's punishment at ninety-nine (99) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Two points of error are raised by appellant, *viz:*

Point of Error One: The trial court improperly admitted into evidence autopsy photographs which were more prejudicial than probative in nature.

Point of Error Two: The trial court erred in failing to include a charge on Criminally Negligent Homicide even though evidence had been presented to support such a charge.

Under her first point of error, appellant generally relies on TEX.R.CRIM.EVID. 403, which provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. However, all of appellant's cases cited in support of her reliance on Rule 403 with regard to photographs were decided prior to the enactment of the Texas Rules of Criminal Evidence. Indeed, appellant relies on *Martin v. State*, 475 S.W.2d 265 (Tex.Crim.App.), *cert. denied*, 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972), which has been held to no longer control the question of admissibility of photographs for cases tried after the enactment of the Texas Rules of Criminal Evidence. *Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).[1] Our analysis of the issue will rely on cases in which Rule 403 has been applied to photographic evidence.

■ The thrusts of appellant's complaint appear to be that the photographs in question are "gruesome" and therefore highly inflammatory, and that the photographs in question are cumulative of prior admitted verbal testimony and photographs. Appellant's further complaint on appeal that the photographs in question depict autopsy procedures that "obfuscated the result of the crime," appears to be a relevancy complaint. Appellant's objection at trial merely complained of the inflammatory nature of the photographs. As Rule 403 applies only to relevant evidence, *Long*, 823 S.W.2d at 271, we assume that appellant had no problem with the relevancy of the photographs at trial. Appellant cannot now raise the relevancy issue as her objection at trial differs

from a portion of her complaint on appeal. Therefore, we will assume, as appellant did at trial, that the photographs in question meet the definition of relevance under TEX. R.CRIM.EVID. 401.

■ When determining whether the trial court erred in admitting relevant photographs into evidence, our review is limited to determining whether said evidence is violative of Rule 403. *Long v. State*, 823 S.W.2d at 271. A court may consider many factors in determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. These factors include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked. *Id.* at 272. A court, however, should not be limited by this list. The availability of other means of proof and the circumstances unique to each individual case should also be considered. *Id.*

■ With regard to the gruesomeness factor, an examination of the photographs in question reveals only one, State's Exhibit 58, which could be considered gruesome, although appellant, both at trial and now on appeal, makes no attempt to discuss any distinguishing features of the sixteen photographs included in the blanket objection to State's Exhibits 43 through 58.[2] We are aided in this conclusion regarding State's Exhibit 58 by considering the descriptions of crime scene and autopsy photographs ultimately held to be admissible by the Court of Criminal Appeals. *See Barnes v. State*, 876 S.W.2d 316 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Fuller v. State*, 829 S.W.2d 191 (Tex.Crim.App.1992), *cert. de-*

---

1. The record reflects that the trial in the instant case began on January 11, 1994. The Rules of Criminal Evidence took effect on September 1, 1986.

2. The other photographs depict a variety of injuries sustained by the seven-year-old victim including bruises on her legs and arms, several healed-over puncture-type wounds, incisions

made by the pathologist at the site of bruises to confirm bruising and rule out birthmarks, and finally, the photographs of the buttocks of the victim which depict the loss of the outer layer of skin as well as fresh cuts around the buttocks and upper legs indicating the severity of the beating.

*nied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); and *Long v. State, supra.* State's Exhibit 58 is an 8″ × 12″ color photograph depicting the head of the victim with the top layer of skin peeled over the top of the skull revealing three distinct bruise-like spots. In the background of State's Exhibit 58, although somewhat out of focus, is depicted the uppermost portion of the victim's open chest cavity; a sight undoubtedly contributing to the gruesomeness of the photograph. According to the testimony of the pathologist, the cause of death of the victim was from blunt trauma to the head. The pathologist further testified that the three bruise-like spots on the top of the skull were caused by the fatal blunt trauma. The pathologist also stated that the three bruise-like spots were not visible from an external examination of the victim's head.

The State's indictment alleged appellant caused the victim's death by striking the victim's head with "an object" or having the victim's head strike "an object" … "by manner and means unknown to the Grand Jury." In separate paragraphs, the indictment alleged appellant engaged in each of the three types of murder as set out in Tex.Penal Code Ann. § 19.02(a) (Vernon 1994). In both *Barnes* and *Fuller,* the Court of Criminal Appeals stated that "it is equally sure that the State's case would not have been rendered significantly less persuasive by exclusion of the pictures." *Fuller, supra* at 206. Nevertheless, in both cases, the Court found that the probative value of the photographs in question was not substantially outweighed by unfair prejudice. *Barnes, supra* at 326; *Fuller, supra* at 206.

In the instant case, the photographs, including State's Exhibit 58, "are not, in our estimation, so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing them." *Barnes, supra* at 326; *Fuller, supra* at 206. Although the photographs are all in color, are fairly detailed in their depiction of the bruising and various wounds sustained by the victim, and depict the victim nude, the peculiarities of the case virtually required such photographic characteristics be presented to the factfinder. Although the appellant's ten-year-old son testified to several beatings he witnessed appellant inflict upon the victim on the day in question, his testimony as to any blunt trauma injury to the victim's head (cause of death) inflicted by appellant was not as clear. Indeed, the cause of death evidence bordered on the circumstantial. As the State had pleaded, *inter alia,* that appellant had "commit[ted] and attempt[ed] to commit an act or acts clearly dangerous to human life and did thereby cause the death of [the victim]," it was entitled to produce evidence of said clearly dangerous, life threatening acts. The photographs depict injuries inflicted upon the victim on the day in question as well as injuries apparently inflicted on past occasions.[3] Appellant never denied that she beat the victim with an extension cord until the victim's buttocks were raw. Appellant, however, adamantly denied striking the victim on the head with any object, and denied causing the victim's head to strike any object. The photographs were clearly probative in aiding the factfinder's determination as to whether the victim's death was the result of intentional acts committed by appellant or was merely an unfortunate accident not caused by appellant. Under the particular circumstances of this case, we simply are not persuaded that the danger of unfair prejudice substantially outweighed the probative value of the photographs in question for the factfinder.

As for the cumulative evidence complaint, appellant's brief complains that the State had already introduced photographs depicting "damage to the child alleged to have been wrought by Appellant, along with verbal descriptions[.]" It has been consistently held that photographs are generally admissible where verbal testimony about the same matter is admissible. *Emery v. State,* 881 S.W.2d 702, 710 (Tex.Crim.App.

---

3. The record is silent as to any objection by appellant that the photographs are inadmissible because they depict unadjudicated extraneous offenses under Tex.R.Crim.Evid. 404(b).

1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); *Hernandez v. State,* 819 S.W.2d 806, 819 (Tex.Crim.App. 1992), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). Furthermore, the record before us reflects that only one other photograph, State's Exhibit 40, depicts injuries to the victim's body and said photograph is only of the victim's head and upper torso and appears to have been taken at the hospital as the victim has various tubes and other hospital equipment attached to her. We find State's Exhibits 43 through 58 are not cumulative to any other evidence admitted before the jury. Point of error one is overruled.

 Under her second point of error, appellant claims that evidence was presented sufficient to raise the requisite elements of criminally negligent homicide and, therefore, an instruction to the jury on said issue was necessary. Criminally negligent homicide is a lesser included offense of murder. *Hunter v. State,* 647 S.W.2d 657, 659 (Tex.Crim.App. 1983). The appropriate test to be applied in determining whether a defendant is entitled to a charge on a lesser included offense is the following:

> [F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, his is guilty only of the lesser offense.

*Rousseau v. State,* 855 S.W.2d 666, 673 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993).

 As criminally negligent homicide is a lesser included offense of murder, the only question presented in the instant case is whether the record before us contains evidence that appellant is "guilty only" of crimi-

nally negligent homicide.[4] In her brief, appellant contends the following:

> Testimony showed that Appellant ought to have been aware of the substantial and unjustifiable risk that the death would occur in that Appellant had been put through some sort of parenting classes and instructions on how to discipline children following an investigation by Child Protective Services prior to the death of [the victim].

Appellant then provides two record citations, one of which is not applicable to the issue before us as it is from the punishment phase of the trial. The testimony allegedly supporting appellant's above complaint is taken from the following portion of the record:

> Q. [Appellant's Trial Counsel]: Were you counseled about how to discipline or counseling, counsel on parenting or—
>
> A. [Appellant]: No. At this time, she came the first day she took a picture of me and Darryl standing outside.
>
> Q. This is a CPS worker?
>
> A. CPS worker. They have to have—I don't know. Then she said—she came in the house and she was, you know, started talking about different things and discipline, asking, "What do you discipline with?"
>
> And I told her I disciplined with a belt. And then she asked about other different things, about discipline.
>
> She was telling me about a lot of different methods I could do disciplining.
>
> Then she stated that she had a 13– and 15–year–old child of her own and she did not use no belt.
>
> She said she used her fists.

Appellant does not explain how this testimony was "sufficient to raise the requisite

---

4. Tex.Penal Code Ann. § 6.03 (Vernon 1994), provides that a person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

elements of criminally negligent homicide" so as to permit the trial court to provide such an instruction to the jury. Furthermore, an examination of the entire record before us indicates that appellant never admitted to having struck the victim *in the head* with any instrument, blunt or otherwise. Nor did appellant ever admit that she caused the victim's head to strike any object. Her entire defense, as we appreciate it, was to admit that she did spank the victim with an extension cord on more than one occasion on the day in question, but that each instance was only for disciplinary purposes and at no time did appellant intend to kill the victim.

■■■ If a defendant simply denies commission of the offense in question, or if there is no evidence specifically raising an issue regarding the lack of the defendant's knowledge that her actions in striking a child on the head could kill said child, then a charge on the lesser included offense of criminally negligent homicide would not be required.

*See Saunders v. State,* 840 S.W.2d 390, 392 (Tex.Crim.App.1992). Under the *Rousseau* test, we cannot say that the record in the instant case contains evidence that would permit a jury rationally to find that if the appellant was guilty, she was guilty *only* of criminal negligent homicide. Point of error two is overruled; the judgment and the sentence of the trial court are affirmed.

AFFIRMED.